UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ANTONIO LUJAN, | § | |
| TDCJ 1102535, | § | |
|     Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION H-06-3087 |
| | § | |
| DOUGLAS DRETKE, *ET AL.*, | § | |
| | § | |
|     Defendants. | § | |

## Opinion on Dismissal

Antonio Lujan filed a complaint for civil rights violations. 42 U.S.C. § 1983. He moves to proceed as pauper. 28 U.S.C. § 1915. Lujan is incarcerated in the Texas Department of Criminal Justice. Lujan sues TDCJ Director Douglas Dretke, Assistant Warden Jones, Sgt. Olivares, Sgt. Crippen, and Major Howell.

1. *Claims*

Lujan's claims follow. He entered the TDCJ on May 5, 2004. On his arrival at his assigned unit, the unit classification committee placed him in administrative segregation. During the classification meeting, the warden said he did not like Mexicans, especially from San Antonio. The unit classification committee assigned Lujan to administrative segregation based on information that he was a member of a prison gang. Lujan claims the information about his gang membership is false. Jones, Crippen, and Howell conspired to fabricate Lujan's gang membership, which endangered his life. In administrative segregation, Lujan gains less work time credits.

Lujan filed grievances against Olivares and Crippen about damage to his typewriter and radio. He was subjected to harassment and retaliation from the gang intelligence office. He was placed on the prison-gang cell row, on the third tier, with other gang members in retaliation for his grievance. Officials knew Lujan had a medical pass and could not climb stairs because of his back condition. After an investigation, officials moved him off the gang cell row to the first tier of cells.

Lujan asks for this relief: release from confinement, the clearing of his prison files, restoration of good time credits, payment for his typewriter and radio, and court costs.

Lujan claims an improper placement in administrative segregation based on false information concerning membership in a prison gang, endangerment of his safety, property deprivations,

retaliation, and an improper cell assignment.

2. *Administrative Segregation*

A prisoner has no constitutional liberty interest in remaining in the general population of a prison and avoiding administrative segregation. *See Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997). This is so even if the segregation is punitive, which Lujan does not claim. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). Placement in administrative segregation based on an initial classification determination by prison officials does not implicate a protected due process interest. *Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003). Lujan has no right to due process concerning the determination to place and keep him in administrative segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Furthermore, even if Lujan were entitled to due process, he does not make any specific allegations which show that the administrative segregation review process is faulty—Lujan does not assert that any specific procedure is inadequate or that the review process lacks any particular procedure required by due process. Lujan's claim is more an attack on the correctness of the decision, not the process under which the classification committee made the determination that Lujan was a gang member.

In *Wilkinson v. Austin*, 545 U.S. 209, (2005), the Supreme Court said that prisoners have a due process right to an informal, non-adversary proceeding before placement in Ohio's harsh supermax prison. Lujan does not claim conditions like those in Ohio's supermax facility. Furthermore, he received an informal, non-adversary hearing. Moreover, after an investigation, officials moved Lujan off the gang row, although he apparently remained in administrative segregation. Lujan has not shown a due process violation concerning his placement in administrative segregation. The warden's unprofessional statement about Mexicans does not violate the Constitution. *See Morgan v. Ward*, 699 F.Supp. 1025, 1055 (N.D.N.Y., 1988).

3. *False Information*

Lujan's claim that the Defendants reached the wrong conclusion concerning his gang membership does not implicate a due process liberty interest. *See Pichardo v. Kinker*, 73 F.3d 612, 613 (5h Cir. 1996) (upholding placement in administrative segregation based on gang affiliation where the prisoner challenged the validity of the gang determination and consistently denied gang affiliation). Lujan fails to state a claim on which relief may be granted concerning the information concerning his gang membership.

4. *Life Endangerment Conspiracy*

The deliberate indifference standard governs Lujan's claim. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The conduct by prison officials must involve a substantial risk of serious harm, must be motivated by a culpable state of mind, and the official must have disregarded the risk by not taking reasonable measures. *Id.* at 837. Lujan does not make any specific allegations showing a substantial risk of serious harm to him by being housed on the gang row or administrative segregation generally. He does not allege anything which shows the Defendants knew facts showing a substantial risk of serious harm to him or that they drew any inference of a risk of harm. *Id.* Furthermore, Lujan admits officials removed him from the gang tier after an investigation. Lujan's allegations are not enough to show a conspiracy. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir 1982) (a plaintiff must allege facts showing that the defendants agreed to commit an illegal act).

5. *Personal Property*

Lujan claims damages to his typewriter and radio and seeks compensation. The due process clause is not implicated by random, unauthorized property deprivations where the plaintiff has an adequate post-deprivation remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 535 (1984); *Simmons v. Poppell*, 837 F. 2d 1243, 1244 (5th Cir. 1988). Texas provides an adequate post-deprivation remedy for the loss of personal property. *Murphy v. Collins*, 26 F.2d 541, 543-44 (5th Cir. 1994). Even where prison employees intentionally deprive an inmate of his property, the deprivation does not violate the due process clause if an adequate post-deprivation remedy is available. *Hudson*, 468 U.S. at 533; *Marshall v. Norwood*, 74l F.2d 761 (5th Cir. 1984).

Lujan fails to state a claim on which relief may be granted on his allegations concerning his personal property.

6. *Retaliation*

Lujan claims that his assignment to the third cell tier with gang members was in retaliation apparently for his grievances against Olivares and Crippen. To prevail on a retaliation claim under the First Amendment, a plaintiff must show (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Lujan's retaliation claim fails because he does not show that his placement on the third tier was motivated by a retaliatory intent and he does not allege a chronology of events raising an inference of retaliation. *Whittington v. Lynaugh*, 842 F.2d 818, 819. (5th Cir. 1988). Lujan's complaint shows he was put on the third tier because the classification committee thought he was a

gang member. Furthermore, they later moved him off the third tier. Lujan essentially relies on the fact that the adverse behavior occurred after he filed his grievance. This is insufficient to show retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.2d 885, 889 (5th Cir. 1995) (that one event follows another in time does not amount to proof of retaliation). Lujan has not alleged facts showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997). Lujan fails to state a valid retaliation claim.

## 7. *Cell Assignment*

Lujan claims his assignment to the third row was inappropriate because of his back condition. Lujan has not shown deliberate indifference. Furthermore, his allegations do not show the temporary housing assignment significantly aggravated a serious medical condition and prison officials were aware of the medical condition and ignored it. *See Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989) (for a court to find a constitutional violation regarding a job assignment, the plaintiff must show that the work significantly aggravated a serious medical condition and prison officials were aware of the medical condition and ignored it.). Lujan fails to state a claim recognized at law concerning his cell assignment.

## 8. *Requested Relief*

Lujan's complaint should be dismissed for another reason besides the fact he fails to state a claim on which relief may be granted in each of his claims—he is not entitled to any of the relief he seeks. Lujan requests: (1) release from confinement, (2) an order clearing his prison files, (3) an order restoring his good conduct and work time credits, and (4) compensation for his typewriter and radio.

This is a civil rights complaint. Lujan does not challenge his custody in prison. Release from confinement does not lie here. If Lujan means release from the confinement of administrative segregation, he is not entitled to equitable relief as a transfer out of administrative segregation; nor to an order clearing his prison files or restoring his any time credits.

This court does not run the Texas prison system. The federal courts should not "substitute [their] judgment on the[] difficult and sensitive matters of institutional administration ...." *Block v. Rutherford*, 468 U.S. 576, 588 (1984). For this court to intrude in the day to day operation of a state prison by ordering specific relief concerning a prisoner's custody status, prison files, or time credits requires the "most extraordinary circumstances." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). There are no such extraordinary circumstances here. The consideration of the principles of federalism

further restricts the granting of injunctive relief by a federal court against a state governmental entity. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975).  Specifically, the Court must take into account the interests of state authorities in managing their own affairs.  *Milliken v. Bradley (Milliken II)*, 433 U.S. 267, 28-81 (1977).  Under these considerations, Lujan's requests for injunctive relief must be denied.  This court's analysis of Lujan's personal property claim resolves his damages claim concerning his typewriter and radio.

9. *Conclusion*

Lujan fails to state a claim recognized at law.  28 U.S.C. § 1915(e)(2)(B)(ii).  This case is dismissed.

The Texas Department of Criminal Justice-Institutional Division will deduct 20% of each deposit made to Antonio Lujan's inmate trust account (1102535) and pay this to the court regularly, provided the account exceeds $10, until the filing fee, $350, is paid.        The Clerk will send a copy to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159, and to the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793 by facsimile transmission, regular mail, or e-mail; and to the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas  75702, Attention: Three-Strikes List, by regular mail or e-mail.

Signed January 10, 2007, at Houston, Texas.

Lynn N. Hughes
United States District Judge